834 F.2d 758
 10 Fed.R.Serv.3d 143
 Alice COVERDELL, acting on her own behalf and as the natural
guardian of her daughter, Christina Robyn
Coverdell, Plaintiffs-Appellants,
v.
The DEPARTMENT OF SOCIAL AND HEALTH SERVICES, STATE OF
WASHINGTON; Barbara McLaughlin; Laura Langston;
and Albert J. Golden, Defendants-Appellees.
 No. 86-3825.
 United States Court of Appeals,
Ninth Circuit.
 Submitted Oct. 9, 1987*.
Decided Dec. 15, 1987.
 
 William F. Etter, Spokane, Wash., and Aaron Horowitz, Dayton, Wash., for plaintiffs-appellants.
 Kenneth O. Eikenberry and H. Andrew Saller, Jr., Olympia, Wash., and Thomas M. Roberts, Spokane, Wash., for defendants-appellees.
 Appeal from the United States District Court for the Eastern District of Washington.
 Before GOODWIN, ALARCON and LEAVY, Circuit Judges.
 ALARCON, Circuit Judge:
 
 
 1
 This appeal raises the following issues: (1) Did the district court err in dismissing plaintiff's complaint for damages under 42 U.S.C. Sec. 1983 (1982) against a state-employed child protective services worker, on the ground that the worker enjoyed absolute immunity from liability for her actions in seeking, obtaining, and executing an ex parte court order directing that plaintiff's newborn daughter be seized from the hospital and placed in temporary shelter care? (2) Did the district court err in dismissing plaintiff's complaint for injunctive relief against the worker on the ground that the complaint was moot? (3) Did the district court err in dismissing plaintiff's claim for damages under 42 U.S.C. Sec. 1985 (1982) against the foster mother of plaintiff's child, on the ground that the record contained no evidence that defendant had acted with a racial or class-based, invidiously discriminatory animus, notwithstanding that defendant's motion for summary judgment was unaccompanied by any supporting materials?
 
 
 2
 Although our reasoning diverges in certain respects from that employed by the district court, we conclude that the result reached by the district court on each issue was correct. Accordingly, we affirm the district court's judgment. We deny appellees' request for attorney's fees on this appeal.
 
 I. FACTS
 
 3
 Defendant-appellee Barbara McLaughlin (McLaughlin) was employed as a child protective services (CPS) worker by defendant-appellee The Department of Social and Health Services, State of Washington (DSHS). Her duties included investigating and reporting cases of alleged child abuse and neglect. Prior to September 1978, a fellow CPS worker informed McLaughlin that plaintiff-appellant Alice Coverdell (Coverdell) had moved into McLaughlin's service region, that Coverdell was pregnant with her third child, and that the court had already terminated Coverdell's parental rights to her eldest child. Coverdell's rights were terminated because she and her husband, Roscoe, were emotionally unstable, easily angered, violent, and a danger to the child.
 
 
 4
 After receiving this information, McLaughlin attempted to visit the Coverdell residence to determine whether conditions there were suitable for the expected child. Coverdell denied McLaughlin admission to the residence.
 
 
 5
 The expected child, Christina, was born on September 27, 1978. Later that day, McLaughlin received a telephone call from an employee of the hospital at which Coverdell was confined. The employee informed McLaughlin that Coverdell had given birth to a girl and that Coverdell had requested that the hospital refrain from notifying DSHS of the birth.
 
 
 6
 The following day, September 28, 1978, McLaughlin provided the Columbia County Prosecutor with an affidavit stating that the court had previously deprived Roscoe and Alice Coverdell of permanent custody of their eldest child, Angel, because of hazardous living conditions; that Union County, Oregon was currently seeking to deprive the Coverdells of permanent custody of their second child, James; that McLaughlin had had personal contact with the Coverdells and believed them to be emotionally unstable; that McLaughlin had requested admission to the Coverdell residence but had been denied access; and that McLaughlin believed that the newborn Christina would be in danger if she were to reside with the Coverdells.
 
 
 7
 The next day, on the basis of McLaughlin's affidavit, the Columbia County Prosecutor filed a motion in state court for an order to take Christina into custody. Coverdell received no notice of the motion, nor was she represented at the hearing. On the same day, the court issued an order authorizing the DSHS to take immediate custody of Christina. The next day, September 30, 1978, McLaughlin executed the court's order by removing Christina from the hospital and placing her in temporary shelter care. On October 27, 1978, the state court ordered that Christina remain in shelter care until further court order.
 
 
 8
 In March 1980, Coverdell petitioned the state court to regain custody of Christina. At the hearing on the petition, McLaughlin testified in opposition to Christina's placement with Coverdell, as did defendant-appellee Laura Langston (Langston), the foster mother who was then caring for Christina. Langston filed a motion to permit her to intervene in this proceeding and requested a hearing. The court denied these requests but stayed its order pending Langston's appeal. Langston then instituted a separate action in state court seeking custody of Christina.
 
 
 9
 Shortly after Coverdell filed her petition, DSHS petitioned the court for termination of Coverdell's parental rights to Christina. During the pendency of that proceeding, DSHS did not permit Coverdell to visit with Christina. Coverdell sought and obtained a court order permitting visitation. Langston again filed a motion to intervene and asked for reconsideration of the order permitting Coverdell to visit Christina. Langston's motion was denied. Sometime after Coverdell begain exercising her court ordered visitation rights, Langston reported to DSHS her suspicion that Coverdell had been sexually abusing Christina. In February 1982, after hearings on the matter, Coverdell's visitation rights were terminated by the state court.
 
 
 10
 The various state court proceedings culminated on December 20, 1984, when the court ordered termination of the parental rights of Alice and Roscoe Coverdell over Christina. That order is now final.
 
 
 11
 On May 31, 1985, Coverdell filed her Amended and Supplemental Complaint in the present case, alleging that the actions of DSHS and McLaughlin, under color of state law, deprived Coverdell of her rights under the United States Constitution and the laws of the United States. Coverdell further charged that DSHS, McLaughlin, and Langston acted individually and in concert to prevent the return of Christina to Coverdell, thereby denying Coverdell her right to equal protection of the laws and equal privileges and immunities under the law; and that the defendants' actions were predicated on their belief that Coverdell was "of an inferior intellectual capacity and of an inferior personality and otherwise mentally handicapped."
 
 
 12
 In January 1986, DSHS and McLaughlin filed a joint Motion for Dismissal and/or Summary Judgment. In February 1986, Langston filed a Motion for Summary Judgment. On April 4, 1986, United States Magistrate Smithmoore P. Myers granted both motions and ordered dismissal of Coverdell's complaint without leave to amend. The district court's rulings are addressed in detail below.[1]
 
 II. JURISDICTION
 
 13
 An order dismissing a complaint without leave to amend is final and appealable.[2] Preferred Communications, Inc. v. City of Los Angeles, 754 F.2d 1396, 1399 (9th Cir.1985), aff'd, 476 U.S. 488, 106 S.Ct. 2034, 90 L.Ed.2d 480 (1986). This court has jurisdiction over Coverdell's timely appeal under 28 U.S.C. Sec. 1291 (1982).
 
 III. DISCUSSION
 
 14
 A. COVERDELL'S CLAIM FOR DAMAGES AGAINST McLAUGHLIN
 
 
 15
 The district court dismissed Coverdell's claim for damages against McLaughlin on the ground that all McLaughlin's actions were within the scope of her statutory authority, hence she enjoyed absolute quasi-prosecutorial immunity from liability for civil damages. On this appeal, Coverdell argues that the district court erred in ruling that McLaughlin enjoyed absolute immunity. Coverdell contends that McLaughlin enjoyed, at most, qualified immunity, and that a jury should be permitted to decide whether McLaughlin's actions were sufficiently malicious and/or unreasonable to defeat the qualified immunity.
 
 1. Nature of Lower Court's Ruling
 
 16
 The DSHS/McLaughlin motion granted by the district court was styled "Motion for Dismissal Based on Failure to State a Claim, Lack of Subject Matter Jurisdiction, Judgment on the Pleadings and/or Summary Judgment." The district court apparently treated the motion as one for dismissal under Fed.R.Civ.P. 12(b)(6).
 
 
 17
 If a party moving for dismissal under Rule 12(b)(6) presents to the court matters outside the pleading and such matters are not excluded by the court, then "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 ...." Fed.R.Civ.P. 12(b). See Fort Vancouver Plywood Co. v. United States, 747 F.2d 547, 552 (9th Cir.1984) (motion to dismiss treated as one for summary judgment where pleadings were accompanied by affidavits).
 
 
 18
 In moving for dismissal, DSHS and McLaughlin presented to the district court a variety of matters outside the pleadings, including McLaughlin's affidavit, the state court's order directing immediate apprehension of Christina, the state court's findings and order for permanent deprivation in an earlier proceeding concerning another child of Coverdell, and other matters. In ruling on defendants' motion, the district court did not exclude such matters. To the contrary, the court relied upon facts set forth in the materials accompanying the motion.
 
 
 19
 In substance, therefore, defendants' motion to dismiss was "converted into a motion for summary judgment." Court v. Hall County, 725 F.2d 1170, 1172 (8th Cir.1984) (motion to dismiss was converted into one for summary judgment where it was accompanied by affidavits and district court did not exclude affidavits from its consideration); 10 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure Sec. 2713 at 599-604 (1983). Accordingly, we will treat the district court's ruling as a granting of the DSHS/McLaughlin motion for summary judgment.
 
 2. Standard of Review
 
 20
 A grant of summary judgment is reviewed de novo. Darring v. Kincheloe, 783 F.2d 874, 876 (9th Cir.1986). Our review is governed by the same standard used by the trial court under Fed.R.Civ.P. 56(c). Id. We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Ashton v. Cory, 780 F.2d 816, 818 (9th Cir.1986).
 
 
 21
 Coverdell apparently submitted no evidence to rebut the evidence submitted by DSHS and McLaughlin. Coverdell recites numerous alleged facts in her briefs, but these recitations merely repeat unsworn factual allegations contained in her earlier memorandum of authorities and in her unverified Amended and Supplemental Complaint. Such assertions do not constitute evidence in opposition to the evidence presented by DSHS and McLaughlin to support their motion. See Flaherty v. Warehousemen, Garage & Service Station Employees' Local Union No. 334, 574 F.2d 484, 486 n. 2 (9th Cir.1978) (assertions made in complaint, legal memoranda, or oral argument are not evidence and do not create issues of fact).
 
 
 22
 The only fact relied upon by Coverdell on appeal that is supported by the evidence is that McLaughlin, without notice to Coverdell or to her attorney, sought, obtained, and executed a court order directing seizure of the newborn Christina from the hospital.[3] The question before this court, then, is whether the district court correctly applied the relevant substantive law to McLaughlin's conduct in seeking, obtaining, and executing the court order.
 
 
 23
 3. Quasi-Prosecutorial Immunity for Seeking and Obtaining Court Order in Child Dependency Proceeding
 
 
 24
 Our recent decision in Meyers v. Contra Costa County Dep't of Social Services, 812 F.2d 1154 (9th Cir.), cert. denied, --- U.S. ----, 108 S.Ct. 98, 98 L.Ed.2d 59 (1987) addressed the issue of immunity for government employees whose duties include the initiation and pursuit of dependency petitions in cases of suspected child abuse or neglect. In Meyers, a CPS worker had been instrumental in the initiation and pursuit of court proceedings during which the court had deprived Meyers of custody over his children. Meyers later sued the CPS worker for damages under 42 U.S.C. Sec. 1983, alleging facts similar to those before the court in this case. Meyers alleged that the CPS worker had engaged in a course of conduct designed to separate Meyers from his children "by supervising an investigation and filing verified dependency petitions with the juvenile court ... requesting that the minor children be declared dependents of the juvenile court and removed from the custody of their father." Id. at 1156.
 
 
 25
 On appeal, this Court affirmed the district court's dismissal of the action, holding that "social workers are entitled to absolute immunity in performing quasi-prosecutorial functions connected with the initiation and pursuit of child dependency proceedings." Id. at 1157. We explained that prosecutorial immunity is essential if prosecutors are to be able independently to perform their public duties free from fear that their actions might give rise to civil liability. Id. at 1156. The immunity must be absolute, rather than merely qualified, "to permit prosecutors to perform their duties without fear of even the threat of section 1983 litigation." Id. (citing Imbler v. Pachtman, 424 U.S. 409, 424-26, 96 S.Ct. 984, 992-93, 47 L.Ed.2d 128 (1976)). For the same reasons, child services workers must be protected by absolute immunity:
 
 
 26
 Although child services workers do not initiate criminal proceedings, their responsibility for bringing dependency proceedings, and their responsibility to exercise independent judgment in determining when to bring such proceedings, is not very different from the responsibility of a criminal prosecutor. The social worker must make a quick decision based on perhaps incomplete information as to whether to commence investigations and initiate proceedings against parents who may have abused their children. The social worker's independence, like that of a prosecutor, would be compromised were the social worker constantly in fear that a mistake could result in a time-consuming and financially devastating civil suit. We therefore hold that social workers are entitled to absolute immunity in performing quasi-prosecutorial functions connected with the initiation and pursuit of child dependency proceedings.
 
 
 27
 Id. at 1157. Accord Mazor v. Shelton, 637 F.Supp. 330, 334-35 (N.D.Cal.1986).
 
 
 28
 The holding in Meyers is consistent with the holdings of other courts. See, e.g., Kurzawa v. Mueller, 732 F.2d 1456, 1458 (6th Cir.1984) (employees of state department of social services who were instrumental in removing child from plaintiffs' home and in placing child in foster homes enjoyed absolute immunity from liability for damages under section 1983); Mazor, 637 F.Supp. at 334-35 (county social worker who took custody of plaintiff's son and arranged for his temporary placement in reliance on information that plaintiff was incapable of caring for him enjoyed absolute immunity from damages under section 1983) ("[T]he role of a social worker in the care of minors is sufficiently analogous to the role of a prosecutor to warrant absolute immunity."); Hennessey v. State of Washington, Dep't of Social and Health Services, 627 F.Supp. 137, 140 (E.D.Wash.1985) (DSHS caseworker who allegedly divulged false and misleading information to county prosecutor, prompting initiation of child dependency proceedings, enjoyed absolute immunity from liability for damages under section 1983); Pepper v. Alexander, 599 F.Supp. 523, 526-27 (D.N.M.1984) (employees of state department of human services who allegedly acted in bad faith in instituting proceeding to deprive plaintiff of parental rights enjoyed absolute immunity from liability for damages under section 1983); Whelehan v. County of Monroe, 558 F.Supp. 1093, 1098 (W.D.N.Y.1983) (agents of county department of social services who, according to plaintiffs, negligently investigated charges of child abuse, instituted groundless court proceeding, and obtained ex parte orders by supplying court with false and misleading information enjoyed absolute immunity from liability for damages under section 1983) ("[T]he roles of the employees of the Department are sufficiently like the role of a prosecutor to warrant coverage by absolute immunity....").
 
 
 29
 Coverdell relies principally on Malley v. Briggs, 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986), for the proposition that McLaughlin enjoys only qualified, rather than absolute, immunity. Coverdell's reliance is misplaced. The issue in Malley was the degree of immunity to be accorded a police officer in an action for damages under section 1983, when the officer allegedly caused plaintiff to be arrested unconstitutionally by presenting a warrant application that failed to establish probable cause. The officer argued that his action in seeking an arrest warrant was analogous to the action of a prosecutor in seeking an indictment. Accordingly, argued the officer, he enjoyed the same absolute immunity that is enjoyed by the prosecutor. 106 S.Ct. at 1096-97.
 
 
 30
 The Court rejected the analogy, explaining that the officer's act in applying for a warrant, "while a vital part of the administration of criminal justice, is further removed from the judicial phase of criminal proceedings than the act of a prosecutor in seeking an indictment." Id. at 1097. The Court held that the officer was entitled to qualified, not absolute, immunity.
 
 
 31
 In Meyers, we determined that the functions of a CPS worker in initiating and pursuing child dependency proceedings are analogous to the functions of the prosecutor in initiating and prosecuting criminal cases. Because McLaughlin was performing a prosecutorial function, Malley's analysis concerning a police officer's immunity is inapplicable.
 
 
 32
 The record shows that McLaughlin sought and obtained a court order directing the immediate apprehension of Christina. In so doing, McLaughlin was "performing quasi-prosecutorial functions connected with the initiation and pursuit of child dependency proceedings." Meyers, 812 F.2d at 1157. Her actions were not only within the scope of her authority under Washington law, they may well have been required. See Wash.Rev.Code Ann. Secs. 26.44.030-.050 (1986 & Supp.1987) (imposing duties on DSHS to investigate possible occurrences of child abuse or neglect, to report same to law enforcement agency and, where necessary, to refer such report to the court); In re Welfare of Frederiksen, 25 Wash.App. 726, 610 P.2d 371, 375 (1979), review denied, 94 Wash. 2d 1002 (1980) (where mother of newborn girl was incapable of understanding and meeting needs of her children and had already damaged her two older children by neglect and failure to meet their needs, DSHS "performed its statutory duty of intervening to protect [the child's] right to conditions of minimal nurture, health and safety" when DSHS removed the child from its mother at birth) (emphasis added).
 
 
 33
 Because McLaughlin's actions in seeking and obtaining a court order were within the scope of her statutory authority as a quasi-prosecutor, she is entitled to absolute immunity from civil liability for her quasi-prosecutorial conduct.
 
 
 34
 4. Quasi-Judicial Immunity for Executing Court Order
 
 
 35
 The record also reveals that McLaughlin, pursuant to the court order, obtained custody of Christina and removed her from the hospital. McLaughlin's execution of the order was not a quasi-prosecutorial function connected with the pursuit of the dependency proceeding. Execution of a court order is not an act analogous to any that a prosecutor would normally perform; it is not, in any sense, advocatory. Cf. Ashelman v. Pope, 793 F.2d 1072, 1076 (9th Cir.1986) (absolute immunity applies when prosecutor acts as an advocate in initiating and presenting state's case). Accordingly, McLaughlin is not protected by quasi-prosecutorial immunity for her action in obtaining custody of Christina at the hospital.
 
 
 36
 We have never fully addressed the question of immunity for persons executing court orders. In Fayle v. Stapley, 607 F.2d 858 (9th Cir.1979), we cited cases from the Third Circuit and from the Northern District of Alabama in ruling that certain government officers were immune from civil rights liability for actions authorized by a state court order. Id. at 862 & n. 4. In two other cases, we stated that quasi-judicial immunity protects those who execute court orders from liability in civil rights actions, but in each case the statement was dictum. See Gregory v. Thompson, 500 F.2d 59, 65 n. 6 (9th Cir.1974) (dictum); Gillibeau v. City of Richmond, 417 F.2d 426, 429 (9th Cir.1969) (dictum); see also Haldane v. Chagnon, 345 F.2d 601, 604 (9th Cir.1965) (bailiff who acted at direction of judge in signing petition alleging bailiff's belief that appellant was in need of medical care enjoyed quasi-judicial immunity from liability for damages in civil rights action; in so acting, bailiff was "a part of the body of the court itself"), disapproved on other grounds, Dennis v. Sparks, 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980).
 
 
 37
 Other circuits, however, have held that persons who faithfully execute valid court orders are absolutely immune from liability for damages in civil rights actions challenging conduct authorized by the order. See, e.g., Henry v. Farmer City State Bank, 808 F.2d 1228, 1238-39 (7th Cir.1986) (sheriff who acted pursuant to official court order enjoyed quasi-judicial absolute immunity from liability for damages under section 1983); Tymiak v. Omodt, 676 F.2d 306, 308 (8th Cir.1982) (same); Slotnick v. Garfinkle, 632 F.2d 163, 166 (1st Cir.1980) ("Judicial immunity extends as well to those who carry out the orders of judges."); Kermit Constr. Corp. v. Banco Credito y Ahorro Ponceno, 547 F.2d 1, 3 (1st Cir.1976) (receiver who faithfully and carefully executes a court order shares the judge's absolute immunity); see also Waits v. McGowan, 516 F.2d 203, 206-07 (3d Cir.1975) (person directly involved in the judicial process may be covered by judicial immunity where he is performing a ministerial function at judge's direction); cases cited in id. at 206-07 n. 6.
 
 
 38
 The rationale for immunizing persons who execute court orders is apparent. Such persons are themselves "integral parts of the judicial process." Briscoe v. LaHue, 460 U.S. 325, 335, 103 S.Ct. 1108, 1116, 75 L.Ed.2d 96 (1983). The fearless and unhesitating execution of court orders is essential if the court's authority and ability to function are to remain uncompromised. As the First Circuit has explained with respect to a receiver who acted pursuant to court directives:
 
 
 39
 To deny him this [absolute] immunity would seriously encroach on the judicial immunity already recognized by the Supreme Court.... It would make the receiver a lightning rod for harassing litigation aimed at judicial orders. In addition to the unfairness of sparing the judge who gives an order while punishing the receiver who obeys it, a fear of bringing down litigation on the receiver might color a court's judgment in some cases....
 
 
 40
 Kermit Constr. Corp., 547 F.2d at 3.
 
 
 41
 The same concerns dictate that a CPS worker be accorded absolute quasi-judicial immunity from liability for damages stemming from the worker's apprehension of a child pursuant to a valid court order. The parent of the apprehended child is not left remediless--he or she may always attack the court's order directly or on appeal. But to permit the CPS worker to become "a lightning rod for harassing litigation aimed at judicial orders" would seriously imperil the effectiveness of state child protection schemes.
 
 
 42
 Coverdell had an opportunity to challenge the court's order directing that Christina be apprehended and placed in temporary shelter care. That order became final long ago and is not at issue on this appeal. Coverdell has neither alleged nor shown that in executing the order, McLaughlin exceeded its scope or acted improperly in any other way. Coverdell's complaint, at bottom, is that McLaughlin apprehended Christina without notice shortly after the child's birth, while mother and child were still recuperating at the hospital. McLaughlin's act, however, was plainly authorized by the court's order, which expressly directed the immediate apprehension of the child from the hospital. Accordingly, McLaughlin enjoys absolute quasi-judicial immunity for executing that order.
 
 
 43
 B. COVERDELL'S CLAIM FOR INJUNCTIVE RELIEF AGAINST McLAUGHLIN
 
 
 44
 1. Nature of the Lower Court's Ruling; Parties' Contentions on Appeal
 
 
 45
 Coverdell's Amended and Supplemental Complaint requested that the lower court enjoin DSHS and McLaughlin "from seizing children of Alice Coverdell and other parents without notice and an opportunity for hearing and an opportunity for parent and child to defend their constitutionally protected interest in their parent-child relationship under the circumstances of this case in which (a) child and mother are confined in their normal relationship at hospital; and (b) [t]here is no allegation supported by probable cause that the child is being harmed by the mother...." The district court concluded that Coverdell's request for injunctive relief against DSHS was barred by the Eleventh Amendment. Coverdell does not challenge this ruling on appeal.
 
 
 46
 The district court further ruled that Coverdell's claim for injunctive relief against McLaughlin was moot: "[T]he issue of McLaughlin's seizing of plaintiff's child while plaintiff is in the hospital and without probable cause to believe the mother is endangering the child, without prior notice, has become moot. There is no threat of immediate, irreparable injury." Accordingly, the court ordered dismissal of the claim for injunctive relief.
 
 
 47
 On appeal, Coverdell argues that injunctive relief is appropriate because she is still of child-bearing age and McLaughlin is still employed by DSHS. Coverdell asserts that McLaughlin was instrumental in having Christina's older sibling seized from a hospital in Oregon, and that Coverdell has "a continuing concern ... that her children would be taken from her at the hospital."
 
 
 48
 McLaughlin responds that dismissal of Coverdell's claim for injunctive relief was proper because Coverdell made no showing of immediate, irreparable injury sufficient to invoke federal jurisdiction.
 
 2. Standard of Review
 
 49
 We apply a de novo standard of review to the district court's determination that an action or claim is moot. Sample v. Johnson, 771 F.2d 1335, 1338 (9th Cir.1985), cert. denied, 475 U.S. 1019, 106 S.Ct. 1206, 89 L.Ed.2d 319 (1986).
 
 3. The Case or Controversy Requirement
 
 50
 "Article III of the Constitution limits the power of federal courts to deciding 'cases' and 'controversies.' " Diamond v. Charles, 476 U.S. 54, 61, 106 S.Ct. 1697, 1703, 90 L.Ed.2d 48 (1986). A person's past exposure to alleged unlawful conduct is insufficient to establish a present case or controversy entitling him to injunctive relief. O'Shea v. Littleton, 414 U.S. 488, 495, 94 S.Ct. 669, 676, 38 L.Ed.2d 674 (1974). Rather, to establish a present case or controversy, plaintiff must demonstrate "the likelihood of similar injury in the future." LaDuke v. Nelson, 762 F.2d 1318, 1324 (9th Cir.1985) (discussing City of Los Angeles v. Lyons, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)), modified, 796 F.2d 309 (9th Cir.1986). Plaintiff must show that there is a "credible threat" that she will again be subject to the particular injury against which injunctive relief is sought. Kolender v. Lawson, 461 U.S. 352, 355 n. 3, 103 S.Ct. 1855, 1857 n. 3, 75 L.Ed.2d 903 (1983). A "mere physical or theoretical possibility" that the challenged conduct will again injure the plaintiff is insufficient to establish a present case or controversy. Murphy v. Hunt, 455 U.S. 478, 482, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982).
 
 
 51
 Moreover, plaintiff's showing must be objective in character; plaintiff's mere attestation that she fears a repetition of the challenged conduct is insufficient to show a likelihood of recurrence. Sample, 771 F.2d at 1343 (citing Preiser v. Newkirk, 422 U.S. 395, 402-03, 95 S.Ct. 2330, 2334-35, 45 L.Ed.2d 272 (1975)). In short, if there is no objectively demonstrable basis for concluding that any future recurrence of the challenged conduct will affect the plaintiff, there is no present case or controversy. Id. at 1340. See, e.g., Rizzo v. Goode, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976) (no more than hypothetical possibility that plaintiffs' individual rights would be violated by unconstitutional police action in future).
 
 4. Likelihood of Recurrence
 
 52
 A de novo review of the record in this case reveals no evidence to support Coverdell's subjective concern that McLaughlin is likely, at some future time, to seize any child of Coverdell from the hospital. Faced with defendants' assertion that Coverdell's claim for injunctive relief was moot, Coverdell, as the plaintiff, bore the burden of demonstrating the existence of a present case or controversy. See Sample, 771 F.2d at 1342. Coverdell, however, presented no evidence to satisfy her burden. She presented no evidence that she was pregnant, that she anticipated becoming pregnant, that she was still capable of bearing children, that she still resided within McLaughlin's service region, or that McLaughlin had taken any action or made any statement to suggest that Coverdell's newborn children might be seized in the future.
 
 
 53
 Coverdell's brief on appeal asserts that McLaughlin has been in contact with every DSHS office "in any geographic area that Mrs. Coverdell has resided," and that "McLaughlin was instrumental in having Mrs. Coverdell's [older] child seized from the hospital in La Grande, Oregon." These assertions, however, find no support in the evidence; they merely restate allegations contained in Coverdell's unverified Amended and Supplemental Complaint.
 
 
 54
 The only evidence bearing on the likelihood that McLaughlin will seize another Coverdell child from the hospital is that presented by McLaughlin herself. The affidavit she presented to the district court states that since giving birth to Christina, Coverdell has borne two more children but that McLaughlin removed neither of those children from Coverdell's custody at the hospital.
 
 
 55
 Coverdell's claim for injunctive relief rests on her unsupported and subjective "continuing concern" that future children will be taken from her at the hospital. We have no reason to doubt the genuineness of that concern. As a matter of law, however, Coverdell's subjective concern is insufficient to show a reasonable likelihood that she will again be the victim of allegedly unlawful conduct. Sample, 771 F.2d at 1343.
 
 
 56
 In summary, Coverdell's claim for injunctive relief against McLaughlin presents no current case or controversy. Under Article III of the Constitution, the district court had no jurisdiction to hear the claim. The court, therefore, acted properly in dismissing the claim. See Demarest v. United States, 718 F.2d 964, 965 (9th Cir.1983) (dismissal is the appropriate disposition if subject matter jurisdiction is absent), cert. denied, 466 U.S. 950, 104 S.Ct. 2150, 80 L.Ed.2d 536 (1984).
 
 
 57
 C. COVERDELL'S CLAIM FOR DAMAGES AGAINST LANGSTON
 
 
 58
 1. Nature of the District Court's Ruling; Parties' Contentions on Appeal
 
 
 59
 Coverdell's Amended and Supplemental Complaint purported to allege claims against Langston under the second clause of 42 U.S.C. Sec. 1985(2) (conspiracy for purpose of impeding due course of justice in any state, with intent to deny equal protection of the laws) and under the first clause of 42 U.S.C. Sec. 1985(3) (conspiracy to deny equal protection of the laws or equal privileges and immunities). Both such clauses require allegation and proof of racial or class-based invidious discrimination. Bretz v. Kelman, 773 F.2d 1026, 1028-30 (9th Cir.1985) (en banc). Accordingly, Coverdell alleged that Langston's actions were "based on [her] belief that the plaintiff Alice Coverdell was of an inferior intellectual capacity and of an inferior personality and otherwise mentally handicapped."
 
 
 60
 Langston filed a motion pursuant to both Rule 12(b)(6) and Rule 56 of the Fed.R.Civ.P., arguing "first that Alice Coverdell has failed to state a claim upon which relief may be granted, and secondly that if a claim has been stated ... there is no evidence available to support the claim." The district court granted Langston's motion for summary judgment, finding "no issue of fact that plaintiff was subjected to class-based, invidiously discriminatory animus. No evidentiary facts are presented to show a conspiracy to violate her right to equal protection of the laws because she is mentally retarded."
 
 
 61
 On this appeal, Coverdell contends that the granting of summary judgment in favor of Langston was erroneous because "the pleadings show substantial issues of all material facts, no depositions, interrogatories, or admissions are on file, and [Langston] has filed no supporting affidavit." Langston responds that a motion for summary judgment need not be accompanied by affidavits and that summary judgment was properly granted because Coverdell failed to produce any evidence to support her allegation of unlawful conspiracy.
 
 2. Standard of Review
 
 62
 As discussed above, a grant of summary judgment is reviewed de novo.
 
 
 63
 3. Summary Judgment Motion Unaccompanied by Supporting Materials
 
 
 64
 Rule 56(b) provides that a defendant may move for summary judgment "with or without supporting affidavits." Fed.R.Civ.P. 56(b). Likewise, Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c) (emphasis added). Langston's failure to provide an affidavit, therefore, is not fatal to her motion for summary judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, ---, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986).
 
 
 65
 Coverdell argued below, and argues on this appeal, that Langston's motion for summary judgment "is not supported by sufficient sworn factual allegations for her to prevail on her motion." Coverdell's position appears to be that Langston's motion was not properly supported, therefore Coverdell was under no obligation to produce any evidence of her own in response to the motion.
 
 
 66
 In Celotex, the Supreme Court rejected the very position now urged by Coverdell. There, plaintiff alleged the wrongful death of her husband resulting from exposure to asbestos products manufactured by defendant Celotex. Celotex moved for summary judgment on the ground that plaintiff had " 'failed to produce evidence that any [Celotex] product ... was the proximate cause of the injuries alleged....' " 106 S.Ct. at 2551 (quoting Celotex's motion for summary judgment). In response to Celotex's motion, plaintiff produced three documents that she claimed created a genuine factual dispute about whether decedent had ever been exposed to Celotex products. Celotex replied that the three documents were inadmissible hearsay and, thus, could not be considered in opposition to the summary judgment motion.
 
 
 67
 The district court, apparently agreeing that plaintiff's evidence could not be considered, granted summary judgment in favor of Celotex. A divided panel of the D.C. Circuit reversed, ruling that the summary judgment motion had been fatally defective because "[i]t advanced only the naked allegation that the plaintiff had not come forward in discovery with evidence to support her allegations...." Catrett v. Johns-Manville Sales Corp., 756 F.2d 181, 185 (D.C. Cir.1985), rev'd sub nom. Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (emphasis in original). See id. at 185 n. 12 (Celotex "came forward literally with nothing save for pointing to perceived short falls in the plaintiff's case."). Therefore, reasoned the majority, Celotex's motion should have been denied for being improperly supported; plaintiff had no obligation to come forward with any evidence, admissible or otherwise, in response to the defective motion. Id. at 185.
 
 
 68
 In dissent, Judge Bork criticized the majority for "supposing that a party seeking summary judgment must always make an affirmative evidentiary showing, even in cases where there is not a triable, factual dispute." Id. at 188 (Bork, J., dissenting). The judge further noted that because a district court may grant summary judgment sua sponte whenever it concludes that required evidence cannot be produced, "it necessarily follows that a defendant may obtain summary judgment when it brings that situation to the court's attention." Id. at 189 (Bork, J., dissenting) (footnote omitted).
 
 
 69
 The Supreme Court reversed the D.C. Circuit, essentially adopting Judge Bork's dissenting view. The Court held that in cases where the nonmoving party will bear the burden of proof at trial on a dispositive issue, "a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.' " Celotex, 106 S.Ct. at 2553 (emphasis added). Such a motion is properly supported, within the meaning of Rule 56(e). The Court found "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim." Id. (emphasis in original); accord Lake Nacimiento Ranch Co. v. County of San Luis Obispo, 830 F.2d 977, 980 (9th Cir.1987). The Court noted that the moving party, of course, "bears the initial responsibility of informing the district court of the basis for its motion...." Celotex, 106 S.Ct. at 2553. But with respect to an issue on which the nonmoving party will bear the burden of proof at trial, the moving party is not required to produce evidence showing the absence of a genuine issue of material fact. "Instead, ... the burden on the moving party may be discharged by 'showing'--that is, pointing out to the District Court--that there is an absence of evidence to support the nonmoving party's case." Id. at 2554. Once the moving party shows the absence of evidence, the burden shifts to the nonmoving party to designate " 'specific facts showing that there is a genuine issue for trial.' " Id. at 2553 (quoting Fed.R.Civ.P. 56(e)).
 
 
 70
 The nonmoving party may not rely merely on the unsupported or conclusory allegations of her pleadings. Fed.R.Civ.P. 56(e); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, ---, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986); see First Nat'l Bank v. Cities Service Co., 391 U.S. 253, 288-90, 88 S.Ct. 1575, 1592-93, 20 L.Ed.2d 569 (1968) (plaintiff cannot defeat properly supported summary judgment motion of defendant charged with conspiracy without offering any significant probative evidence tending to support the complaint). If the nonmoving party fails to make a showing sufficient to establish that there is a genuine issue of fact with respect to the disputed element of the party's case, then summary judgment is appropriate. Celotex, 106 S.Ct. at 2552-53; California Architectural Bldg. Prod., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir.1987).
 
 
 71
 Although summary judgment is often questionable in civil rights actions where the defendant's motive and intent are involved, see 10A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure Sec. 2732.2 at 349-51 (1983), the cases discussed above, and many others, establish that even in a civil rights action, plaintiff may not survive a motion for summary judgment without offering some evidence in support of her claim. See, e.g., Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir.) (conclusory allegations of conspiracy are insufficient to resist summary judgment in Title VII case), cert. denied, 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985); Munson v. Friske, 754 F.2d 683, 690 (7th Cir.1985) ("[A]lthough summary judgment is usually not proper in a case involving a weighing of conflicting questions of motive and intent, summary judgment is proper where the plaintiff presents no indications of motive and intent supportive of his position."); Mitchel v. General Electric Co., 689 F.2d 877, 879 (9th Cir.1982) (per curiam) (dictum) (plaintiff in Title VII action may not rely on "unsubstantiated and conclusory allegations" to resist defendant's summary judgment motion); Melson v. Kroger Co., 578 F.Supp. 691, 699 (S.D. Ohio 1983) (summary judgment for defendant proper where "[p]laintiffs have simply not advanced or referred to any facts in the record which support their Sec. 1981 claims").
 
 
 72
 As the moving party, Langston discharged her burden by pointing out to the district court the absence of any evidence that Langston's actions had been motivated by racial or other class-based animus. The burden then shifted to Coverdell to make a showing that there was a genuine issue of fact concerning the motivation underlying Langston's conduct. To withstand Langston's motion, Coverdell was obliged to show that there were "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson, 106 S.Ct. at 2511.
 
 
 73
 Coverdell failed to come forward with any evidence to raise a genuine issue concerning Langston's motivation. Coverdell filed no affidavit of her own, took no depositions, and propounded no interrogatories or requests for admissions. Consequently, the only evidence before the district court was that provided by DSHS and McLaughlin. That evidence provides no support for Coverdell's allegation that Langston acted from a belief that Coverdell was mentally handicapped and inferior to Langston, or from any other class-based or invidiously discriminatory animus.
 
 
 74
 Because Coverdell failed to bear her burden of showing that the issue of Langston's animus, an essential element of Coverdell's case, could reasonably be resolved in Coverdell's favor, the granting of summary judgment in favor of Langston was proper.
 
 D. ATTORNEY'S FEES ON APPEAL
 
 75
 Appellees request attorney's fees on appeal under 42 U.S.C. Sec. 1988 (1982), which authorizes an award of attorney's fees to the prevailing party in certain civil rights actions, including actions under sections 1983 and 1985. Under section 1988, a prevailing defendant in a civil rights action is entitled to fees only if the plaintiff's action was "frivolous, unreasonable, or without foundation." Hughes v. Rowe, 449 U.S. 5, 14-15, 101 S.Ct. 173, 178-79, 66 L.Ed.2d 163 (1980) (per curiam); Parks v. Watson, 716 F.2d 646, 664 (9th Cir.1983). The mere fact that the defendant has prevailed in the action does not, ipso facto, support an award of fees. Hughes, 449 U.S. at 14-15, 101 S.Ct. at 178-79.
 
 
 76
 Even assuming that a defendant who prevails at the district court yet fails to request attorney's fees at that time may later seek fees for a successful defense of the judgment on appeal, cf. Shaw v. Neece, 727 F.2d 947 (10th Cir.) (where district court properly awarded city employees attorney's fees incurred in defending frivolous and unreasonable action, employees were also entitled to fees incurred in successful defense of judgment on appeal), cert. denied, 466 U.S. 976, 104 S.Ct. 2358, 80 L.Ed.2d 830 (1984), appellees' request for fees on this appeal must be denied because Coverdell's appeal is not "frivolous, unreasonable, or without foundation." It should be noted that the Meyers case, which disposes of Coverdell's claim for damages against McLaughlin, was decided after the parties' briefs had been filed in this appeal. At the time of filing of her brief, Coverdell's position that McLaughlin was entitled to qualified, rather than absolute, immunity, though erroneous, was reasonable and fairly grounded in the authorities.
 
 
 77
 For the reasons discussed above, the district court's judgment in this case is AFFIRMED.
 
 
 
 *
 The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34-4 and Fed.R.App.P. 34(a)
 
 
 [1]
 Throughout this opinion, we shall refer to the magistrate as the "district court."
 
 
 [2]
 Coverdell's original complaint alleged claims against Albert J. Golden, the court-appointed guardian ad litem for Christina. On June 28, 1982, the district court dismissed the claims against Golden, and Coverdell did not assert any claims against him in her Amended and Supplemental Complaint. The district court's subsequent dismissal of Coverdell's claims against DSHS, McLaughlin and Langston, therefore, terminated the action as to all parties. Cf. Fed.R.Civ.P. 54(b) (final judgment as to less than all parties in a multiple-party case)
 
 
 [3]
 Coverdell also asserts in her opening brief, without citation to the record, that McLaughlin secretly sought to delay the release of Coverdell and Christina from the hospital in order to facilitate the seizure of the child. The record provides no support for this assertion. On the contrary, the record shows that McLaughlin acted expeditiously. She submitted an affidavit to support the state's petition for an order protecting the newborn Christina only one day after the child's birth. The court issued the requested order one day later
 In her supplemental brief, Coverdell attempts to distinguish Meyers v. Contra Costa County Dep't of Social Services, 812 F.2d 1154 (9th Cir.), cert. denied, --- U.S. ----, 108 S.Ct. 98, 98 L.Ed.2d 59 (1987), discussed below, by emphasizing actions allegedly taken by McLaughlin prior to the institution of the court proceeding. Specifically, Coverdell asserts that McLaughlin was "making plans" to seize Coverdell's child at birth and that McLaughlin "contacted the hospital weeks in advance and asked to be advised when Mrs. Coverdell arrived." These assertions are not supported by the record. Indeed, the supplemental brief contains no citations to the evidence of record; it merely reprints the unsupported factual narratives from Coverdell's opening brief and from her Memorandum in Opposition to Motion for Dismissal, neither of which constitutes evidence. See Flaherty, 574 F.2d at 486 n. 2.