**Richard McKINNEY, a single man, Plaintiff—Appellant,**

**v.**

**State of WASHINGTON, Department of Social and Health Services, a state government and its division and agency Ken Kramer; Jane Doe Kramer, husband and wife and the marital community comprised thereof; Michael Saunderson Jane Doe Saunderson, husband and wife and the marital community comprised thereof, Defendants—Appellees.**

No. 06–35811.

United States Court of Appeals, Ninth Circuit.

Submitted Aug. 8, 2008.*

Filed Oct. 16, 2008.

---

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

* The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

Richard McKinney, Seattle, WA, pro se.

Jeffrey A.O. Freimund, Esq., AGWA—Office of the Washington Attorney General (Olympia) Torts Division, Olympia, WA, for Defendants–Appellees.

Before: PREGERSON, HALL, and NOONAN, Circuit Judges.

MEMORANDUM **

Richard McKinney ("McKinney") appeals the district court's decision granting summary judgment for the defendants in his 42 U.S.C. § 1983 claim. The parties are familiar with the facts of the case, so we repeat them here only to the extent necessary to explain our decision. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

Kramer was entitled to absolute immunity for the discretionary decisions involved in the filing and prosecution of the dependency case. *Beltran v. Santa Clara County,* 514 F.3d 906, 908 (9th Cir.

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

2008) (en banc) ("[S]ocial workers have absolute immunity when they make discretionary, quasi-prosecutorial decisions to institute court dependency proceedings to take custody away from parents." (internal quotation omitted)). This discretion includes the decision to name both of McKinney's children in the dependency petition. Kramer was also entitled to absolute immunity for his actions in executing the court order to remove C.M. from McKinney's custody. *See Coverdell v. Dep't of Soc. and Health Servs.*, 834 F.2d 758, 764–65 (9th Cir.1987).

■ Contrary to the district court's decision, however, Kramer was not entitled to absolute immunity for his investigation. After the district court's decision in this case, an en banc panel of this court held in *Beltran* that just "as prosecutors and others investigating criminal matters have no absolute immunity for their investigatory conduct, a fortiori, social workers conducting investigations have no such immunity." 514 F.3d at 908–09. We therefore conclude that Kramer is not entitled to absolute immunity for his investigation.

■ Nonetheless, we affirm the district court's grant of summary judgment because we agree with the district court that Kramer was protected by qualified immunity. Under *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), we apply a two-part test to determine if qualified immunity shields a defendant from liability. First, "do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* at 201, 121 S.Ct. 2151. And second, if the officer's conduct did deprive plaintiff of a constitutional right, the court analyzes whether "the right was clearly established." *Id.*

Here, we do not reach the second step of the *Saucier* analysis because we conclude that Kramer's conduct did not violate McKinney's constitutional rights. McKinney claims Kramer denied him due process in two main ways: (1) by failing to interview him before initiating dependency proceedings; and (2) by failing to adduce any evidence he had abused C.M. and instead relying only on accusations of abuse against R.M. Neither claim is persuasive. As to the failure to interview him, we see no due process requirement that a child abuse investigation include an interview with the alleged abuser, no matter what other witnesses say about his conduct. And here, the investigation was thorough, as it included interviews with the alleged victim himself (R.M.), the victim's mother (Mary Cunniffe), and other family members. Notably, McKinney's first wife Bonnie stated that he abused her and had deprived her son Jason of sleep as a punishment, which was the same sort of abuse alleged by R.M. Investigators also contacted Bonnie's daughter Lisa, who corroborated McKinney's tendencies toward physical and emotional abuse. They also contacted William Holtz, Cunniffe's son, who said McKinney had choked him and Cunniffe, and punched him and his brother Greg in the face. Holtz also stated that he had seen bruises and cuts on R.M.'s wrists, which R.M. attributed to McKinney.

These interviews refute McKinney's suggestion that Kramer relied too heavily on statements from R.M. and Cunniffe. Even if McKinney had pled his theory that R.M. and Cunniffe were fabricating the story because he had R.M. arrested for setting a fire, R.M. and C.M. would almost certainly have been removed.

Moreover, given the pattern of abuse toward five other children and two wives, it was more than reasonable to infer that C.M. would become a target of abuse, if he had not already. The investigation yielded probable cause to believe C.M. would be a victim, and was constitutionally adequate.

Because Kramer's actions did not violate McKinney's constitutional due process

rights, Kramer was protected by qualified immunity. The decision of the district court is therefore **AFFIRMED.**

---

* The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.