884 F.2d 497
 Rudolph BABCOCK, individually and as guardian for two minor
children, Beth Babcock and Erika Babcock; Angela
Long; Willis Babcock and Elizabeth
Babcock, husband and wife,
Plaintiffs-Appellees,
v.
Wanda TYLER; Mark Bronson, in their individual capacities,
Defendants-Appellants.
 No. 88-3521.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted May 4, 1989.
Decided Sept. 6, 1989.
 
 Owen F. Clarke, Jr., Sr. Asst. Atty. Gen., and Michael E. Grant, Asst. Atty. Gen., Spokane, Wash., for defendants-appellants.
 Michael R. Seidl, Bullivant, Houser, Bailey, Pendergrass & Hoffman, Portland, Or., and Robert J. Crotty, Lukins & Annis, Spokane, Wash., for plaintiffs-appellees.
 Appeal from the United States District Court for the Eastern District of Washington.
 Before ALARCON and THOMPSON, Circuit Judges, and TASHIMA, District Judge.*
 DAVID R. THOMPSON, Circuit Judge:
 
 
 1
 In this case we consider whether Washington Department of Social and Health Services ("DSHS") caseworkers are entitled to absolute immunity. The caseworkers performed investigative and placement services in child dependency proceedings which had been transferred to Washington from Louisiana pursuant to interstate compact. Consistent with a recommendation of the DSHS, the Washington court placed the children in the home of Lee and Janet Michael. Lee Michael sexually abused the children. He had a prior criminal record which included charges of forceable rape, attempted rape and sexual assault. No inquiry was made concerning this criminal record during the caseworkers' investigation. Had it been, the criminal record would have been discovered.
 
 
 2
 In this ensuing lawsuit which was brought pursuant to 42 U.S.C. Sec. 1983, the district court determined that the caseworkers were not entitled to absolute immunity, denied their motion to dismiss and denied their motion for summary judgment. Relying on principles we articulated in Meyers v. Contra Costa County Dep't of Social Servs., 812 F.2d 1154 (9th Cir.), cert. denied, --- U.S. ----, 108 S.Ct. 98, 98 L.Ed.2d 59 (1987), and Coverdell v. Dep't of Social and Health Servs., 834 F.2d 758 (9th Cir.1987), we conclude that the caseworkers are entitled to absolute immunity; and we reverse.
 
 FACTS
 
 3
 Rudolph and Ann Long Babcock were married in 1970. Their family included four children: Erika and Beth Babcock, and Angela and Aryn Long. Ann was the natural mother of all four girls. Aryn and Angela ("the Long girls") were Ann's children from a prior marriage. Rudolph was the natural father of Erika and Beth ("the Babcock girls"). Ann committed suicide in 1978. All four children continued to live with Rudolph. He remarried, but the marriage lasted less than a year. Rudolph was apparently unable to care for the children alone, and in July 1981 the Louisiana Department of Health and Human Resources obtained an order of dependency which mandated removal of the children from Rudolph's care and custody. Following a four-day hearing, the Louisiana court ordered all four girls placed with Rudolph's parents, Willis and Elizabeth Babcock, who were residents of Richland, Washington. The Louisiana court ordered the Louisiana Department of Health and Human Resources to transfer the case to Washington. The girls arrived at the elder Babcocks' home in Washington about three weeks later. Rudolph also moved in with his parents.
 
 
 4
 On October 7, 1981, the Louisiana court ordered Rudolph to leave his parents' home and to reside apart from the girls. He did so, traveling to Wisconsin where he established a new residence. On the same date, the Louisiana court formally relinquished jurisdiction on condition that Washington accept jurisdiction of the case.
 
 
 5
 On November 5, 1981, the Washington DSHS requested and obtained from the Washington juvenile court an order by which Washington accepted jurisdiction. The Washington court order contained recitals that it was based on a finding of dependency having been made by the Louisiana court; a dispositional order having been entered by the Louisiana court placing the children with the elder Babcocks in the State of Washington; appropriate interstate compact proceedings having been instituted by Louisiana; the Washington court's review of the case record to the date of its order; and the agreement of the parties.
 
 
 6
 Following Washington's acceptance of jurisdiction, a dependency disposition hearing was held in the Washington juvenile court on March 31, 1982. Rudolph Babcock obtained a continuance of the hearing as to the Babcock girls. The court entered a "temporary order" placing the Long girls in the home of Lee and Janet Michael. Janet Michael is the sister of the Long girls' natural mother, Ann Long Babcock.
 
 
 7
 Meanwhile, back in February 1982, Rudolph Babcock had removed the Babcock girls from his parents' home, taking them to his new home in Wisconsin. A Wisconsin court granted full faith and credit to a Washington order of requisition and remanded the Babcock girls to the custody of the Washington DSHS. The Babcock girls returned to Washington on April 19, 1982. By that time the Long girls had been placed in the home of Lee and Janet Michael. Washington caseworker Mark Bronson, acting without a court order, placed the Babcock girls there as well.
 
 
 8
 On May 4, 1982, a second hearing was held before the Washington juvenile court in the Long/Babcock girls' case. In her report, Wanda Tyler, a DSHS caseworker, recommended that all four girls remain with the Michaels. Rudolph objected to this recommendation, and the case was continued for further hearing. Pending the continuance, the court determined that the girls should remain with the Michaels.
 
 
 9
 The record indicates that several hearings were held thereafter as Rudolph Babcock continued his efforts to regain custody of his daughters. These efforts proved unsuccessful. As late as September 1983, the Washington DSHS reported that the girls were "fitting in very well" in the Michaels' home, and counselors who conducted psychological examinations were convinced that the girls were experiencing family stability. The Long and Babcock girls remained in the Michaels' home until October 1983, when it was discovered that Lee Michael had sexually abused all four girls, in addition to his own daughter. Lee Michael was arrested and subsequently convicted on three counts of statutory rape and two counts of indecent liberties. He is presently serving a 55-year sentence.[1]
 
 
 10
 In 1984, Rudolph Babcock, on behalf of himself and the two Babcock girls, and Angela Long, one of the Long girls, filed in the district court a civil rights action pursuant to 42 U.S.C. Sec. 1983 against Washington DSHS caseworkers Wanda Tyler and Mark Bronson.[2] The plaintiffs alleged deprivation of their first amendment right of family association, violation of the children's fourteenth amendment liberty interests in being free from harm while in the state's custody, and violation of fourteenth amendment liberty interests which the plaintiffs claimed existed by virtue of Washington statutes that require the DSHS to provide family reunification services.[3]
 
 JURISDICTION
 
 11
 In February 1986, defendants Tyler and Bronson filed a motion in the district court to dismiss the plaintiffs' complaint on the ground of absolute immunity. The district court denied the motion. Subsequently, we decided Meyers and Coverdell. In 1988, Tyler and Bronson moved for summary judgment. They contended they were entitled to absolute immunity, as well as qualified immunity. The district court ruled on the defendants' motion for summary judgment in its order dated January 11, 1988. In that order, it also reconsidered its earlier ruling by which it had denied the defendants' motion to dismiss on the basis of absolute immunity. The district court's reconsideration of its earlier order was prompted by our decisions in Meyers and Coverdell. The district court denied the defendants' motion for summary judgment, and refused to dismiss the case on the ground of absolute immunity.
 
 
 12
 Tyler and Bronson appeal from the district court's January 11, 1988 order. The plaintiffs move to dismiss the appeal on the ground that it is not timely as to the issue of absolute immunity, because, they contend, the 1986 order which initially denied the motion to dismiss is the order from which an appeal of the absolute immunity ruling should have been taken, and as to that order the appeal is untimely; and in any event, they argue, the appeal of the January 11, 1988 order is an impermissible appeal from an interlocutory order.
 
 
 13
 We deny the motion to dismiss the appeal. In making its January 11, 1988 order, the district court reconsidered its earlier 1986 order and reached the merits of the caseworkers' claim to absolute immunity. Reconsideration was appropriate in view of the intervening Meyers and Coverdell decisions as the district court discussed in its January 11, 1988 order. See Kennedy v. LeFebvre, 847 F.2d 482, 483 (8th Cir.1988). Having reconsidered the merits of the defendants' claim to absolute immunity, the district court rejected the defense, resolved the issue against the defendants, and denied the motion for summary judgment. Thus, the appeal from the January 11, 1988 order raises the issue of the defendants' entitlement to absolute immunity, and the appeal is timely.[4]
 
 
 14
 With regard to the plaintiffs' argument that this appeal is not taken from a final judgment, we agree this is the posture of the case. However, a district court's "denial of a substantial claim of absolute immunity is an order appealable before final judgment, for the essence of absolute immunity is its possessor's entitlement not to have to answer for his conduct in a civil damages action." Mitchell v. Forsyth, 472 U.S. 511, 525, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985). The plaintiffs argue that Mitchell permits an appeal from an interlocutory order denying absolute immunity only if the issue being appealed is a "purely legal" one.
 
 
 15
 In Mitchell, the Court stated that "A district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. Sec. 1291 notwithstanding the absence of a final judgment." Mitchell, 472 U.S. at 530, 105 S.Ct. at 2817 (emphasis added). The Court placed no such limitation on an interlocutory appeal from an order denying absolute immunity. See id. at 525, 105 S.Ct. at 2815. Nevertheless, we do not have to resolve the question whether an appeal from an interlocutory order denying absolute immunity must relate only to a district court's determination of an issue of law. Here, there is no dispute that the children were the subjects of child dependency proceedings which began in Louisiana and were transferred pursuant to interstate compact to Washington. Nor is there any dispute that all of the defendants' actions of which the plaintiffs complain were taken during the course of the Washington child dependency proceedings. The question is whether, under facts which are not in dispute, or which may be conceded for purposes of this appeal, the defendants are entitled to absolute immunity. This is an issue of law.[5] See United States v. McConney, 728 F.2d 1195, 1202 (9th Cir.1984) (en banc).
 
 DISCUSSION
 
 16
 It is well established that judges, advocates and witnesses enjoy absolute immunity from liability for acts performed in judicial proceedings, "to assure that [they] can perform their respective functions without harassment or intimidation." See Butz v. Economou, 438 U.S. 478, 512, 98 S.Ct. 2894, 2913, 57 L.Ed.2d 895 (1978). Similarly, prosecutorial immunity protects acts taken " 'in initiating a prosecution and in presenting the state's case.' " Ashelman v. Pope, 793 F.2d 1072, 1076 (9th Cir.1986) (en banc) (quoting Imbler v. Pachtman, 424 U.S. 409, 431, 96 S.Ct. 984, 995, 47 L.Ed.2d 128 (1976)). Prosecutorial immunity, like judicial immunity, is absolute rather than qualified in order to permit performance without fear of litigation. Imbler, 424 U.S. at 424, 96 S.Ct. at 996.
 
 
 17
 Absolute immunity from liability under 42 U.S.C. Sec. 1983 has been accorded state employees responsible for the prosecution of child neglect and delinquency petitions, the guardian ad litem who serves as an advocate for the children in such proceedings, and psychologists and psychiatrists who provide information and findings for use in the proceedings by the State Department of Social Services. Kurzawa v. Mueller, 732 F.2d 1456, 1458 (6th Cir.1984). Such persons are accorded absolute immunity because their participation in the court proceedings is an integral part of the judicial process. Id. See also Briscoe v. LaHue, 460 U.S. 325, 345-46, 103 S.Ct. 1108, 1120-21, 75 L.Ed.2d 96 (police officer as witness). In contrast, police officers have been denied absolute immunity in their submission of affidavits in support of warrants on the theory that this function is too removed from the judicial process. Malley v. Briggs, 475 U.S. 335, 342, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986). Thus, the crucial inquiry in resolving a claim of absolute immunity is whether the function for which immunity is claimed is so much an integral part of the judicial process that to deny immunity would disserve the broader public interest in having participants such as judges, advocates and witnesses perform their respective functions without fear of having to defend their actions in a civil lawsuit. See Butz, 438 U.S. at 512, 98 S.Ct. at 1096.
 
 
 18
 Applying this rationale, we have extended absolute prosecutorial immunity to social service caseworkers in initiating and pursuing child dependency proceedings, Meyers v. Contra Costa County Dep't of Social Servs., 812 F.2d 1154, 1157 (9th Cir.), cert. denied, 484 U.S. 829, 108 S.Ct. 98, 98 L.Ed.2d 59 (1987), and in seeking and obtaining a court order for the seizure and placement of a newborn child, Coverdell v. Dep't of Social & Health Servs., 834 F.2d 758, 764 (9th Cir.1987). We have also held that a child protective services worker who executes a court order for seizure and placement of a child is entitled to absolute quasi-judicial immunity. Id. at 765.
 
 
 19
 The plaintiffs argue that in contrast to the broad public policy underpinning the doctrine of absolute immunity, and our application of this policy in Meyers and Coverdell, the acts of the caseworkers in the present case exceeded the boundaries which limit the reach of absolute immunity. They contend that absolute immunity in the case now before us may only be extended to the initiation of dependency proceedings in Louisiana, not to any acts which occurred thereafter in Washington. They also assert that defendant caseworker Tyler conspired with Lee Michael to engineer a state court decision which placed the children in the custody of the Michaels. The plaintiffs further contend that Tyler and Bronson acted outside the scope of their protected functions when, without any court order, they took it upon themselves to make placement changes of the children.
 
 
 20
 It is undisputed that neither Tyler or Bronson participated in the initiation of the dependency proceedings. The proceedings were initiated in Louisiana. The girls were "adjudicated children in need of care [and] placed in the care and custody of the State of Louisiana, Department of Health and Human Resources" by order of the Louisiana court on September 3, 1981. The Louisiana court then placed the children with Willis and Elizabeth Babcock in Richland, Washington.
 
 
 21
 On November 5, 1981, the Washington court accepted jurisdiction over the girls "due to their current placement in the care of their paternal grandparents who reside in Benton County[, Washington]." From this point on, the DSHS Service Episode Record (the "SER"), in which the Washington caseworkers recorded their notes as the case progressed, reveals numerous and extensive interviews with the Babcocks, the Michaels, the children and others. The SER also reflects visits by caseworkers to the Babcocks' and Michaels' homes to conduct home studies, and it shows that Tyler and Bronson gathered extensive information bearing upon placement of the children. The caseworkers also made recommendations for the placement of the children and testified in court on behalf of the DSHS.
 
 
 22
 The plaintiffs argue that Tyler's and Bronson's involvement in the case occurred during the "post-adjudication reunification phase of [the] dependency" proceedings. They characterize this involvement as consisting of "purely administrative or ministerial" acts performed by the caseworkers in connection with the supervision and placement of the children. And they contend such activity is not protected by absolute immunity. We disagree.
 
 
 23
 Dependency proceedings include post-adjudication activities as well as acts by which the proceedings are initiated. See Meyers, 812 F.2d at 1157. The reason for this is apparent. Caseworkers' duties do not end with the adjudication of child dependency. Depending on state law, caseworkers will have various statutory duties to perform during the time between the initial adjudication of dependency and final disposition of a case. See R.C.W. 13.34.120 (1983). In Washington, the dependency process does not end until six months after the dependent child returns home. R.C.W. 13.34.130 (1983). Throughout this process, caseworkers need to exercise independent judgment in fulfilling their post-adjudication duties. The fear of financially devastating litigation would compromise caseworkers' judgment during this phase of the proceedings and would deprive the court of information it needs to make an informed decision, Meyers, 812 F.2d at 1157. There is little sense in granting immunity up through adjudication of dependency, and then exposing caseworkers to liability for services performed in monitoring child placement and custody decisions pursuant to court orders. These post-adjudication actions by social caseworkers may or may not be prosecutorial in nature. See Coverdell, 834 F.2d at 764; cf. Meyers, 812 F.2d at 1156. In any event, however, all of Tyler's and Bronson's actions of which the plaintiffs complain were taken in connection with, and incident to, ongoing child dependency proceedings. Whether their immunity is characterized as quasi-prosecutorial or as quasi-judicial, see Coverdell, 834 F.2d at 765, Tyler and Bronson are entitled to absolute immunity.
 
 
 24
 The plaintiffs assert that Tyler should not be entitled to immunity because she conspired with Lee Michael to skew the DSHS recommendation in favor of the Michaels and to obtain a court order placing the children in the Michaels' home. We reject this contention. A social caseworker's entitlement to the defense of absolute immunity in the performance of her duties incident to child dependency proceedings cannot be defeated by allegations that the caseworker conspired with one of the parties to affect the outcome of the case. The Supreme Court has recognized that with regard to prosecutors,
 
 
 25
 [T]his immunity does leave the genuinely wronged defendant without civil redress [under section 1983] against a prosecutor whose malicious or dishonest action deprives him of liberty. But the alternative of qualifying a prosecutor's immunity would disserve the broader public interest. It would prevent the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system.
 
 
 26
 Imbler, 424 U.S. at 427-28, 96 S.Ct. at 993-94. The performance of a social-worker's duty in child dependency proceedings is no less entitled to the protection of absolute immunity than is the performance of a prosecutor's duty in a criminal proceeding. Coverdell, 834 F.2d at 762-63. Their immunity must be absolute to permit them to perform their duties without fear of even the threat of section 1983 litigation. Id.
 
 
 27
 Plaintiffs also contend that even if Tyler and Bronson are entitled to immunity with regard to their placement recommendations, they should not be accorded immunity for two temporary placements of the children which they made without a court order.[6] These two instances of placement, however, do not affect the result in this case. Tyler's temporary placement of the Long girls in a licensed foster home without a court order did not result in any harm. Bronson's temporary placement of the Babcock girls in the Michaels' home in April 1982 without a court order did not result in any harm during the period of that temporary placement; the sexual abuse occurred after the Washington juvenile court made its order in May 1982 confirming Bronson's placement of the children with the Michaels.
 
 CONCLUSION
 
 28
 Defendants Tyler and Bronson are entitled to absolute immunity. As we have previously stated, "the policies in support of immunity can only be fulfilled if immunity is freely granted and the exceptions are few and narrowly drawn." Ashelman, 793 F.2d at 1079. This case meets the criteria for the application of the doctrine of absolute immunity as articulated by us in Meyers v. Contra Costa County Dep't of Social Servs., 812 F.2d 1154 (9th Cir.), cert. denied, 484 U.S. 829, 108 S.Ct. 98, 98 L.Ed.2d 59 (1987), and Coverdell v. Dep't of Social and Health Servs., 834 F.2d 758 (9th Cir.1987).
 
 
 29
 REVERSED and REMANDED with instructions to dismiss the action.
 
 
 
 *
 Honorable A. Wallace Tashima, United States District Judge for the Central District of California, sitting by designation
 
 
 [1]
 After the departure of Lee Michael, the Long and Babcock girls asked to be allowed to continue living with Janet Michael. They were permitted to do so. In December 1983, following a successful home study, the two Babcock girls were returned to the custody of Rudolph, who had moved to Oklahoma. Aryn and Angela Long continued in the custody of Janet Michael until they reached the age of majority. Babcock v. State, 112 Wash.2d 83, 768 P.2d 481, 486 n. 1 (1989)
 
 
 [2]
 The elder Babcocks, Willis and Elizabeth, the grandparents of the Babcock girls, initially joined in the lawsuit. Their claims, however, were dismissed with prejudice and are not involved in this appeal
 
 
 [3]
 The plaintiffs also included state claims in their complaint. These claims were dismissed by the district court and were pursued by the plaintiffs in Washington state court. In their state case, the plaintiffs alleged causes of action based on negligence, outrageous conduct, alienation of affection, and the violation of federal civil rights under color of state law, 42 U.S.C. Sec. 1983. The Washington superior court granted summary judgment in favor of the defendants and dismissed all of the plaintiffs' claims. Babcock v. State, 112 Wash.2d 83, 768 P.2d 481, 486 (1989). Because the section 1983 action was then pending in the federal district court, the plaintiffs did not appeal the state court's dismissal of it. Id. They did appeal the dismissal of their other claims. Id. The Supreme Court of Washington affirmed dismissal of the claims on the ground that the caseworkers were entitled to absolute immunity. Id
 Because we hold that the defendant caseworkers are entitled to absolute immunity under applicable Supreme Court and Ninth Circuit authority, we do not consider the separate question of whether the Washington Supreme Court's decision should be given preclusive effect on the issue of federal immunity in this section 1983 suit.
 
 
 [4]
 Plaintiffs rely on Sierra On-Line, Inc. v. Phoenix Software, Inc., 739 F.2d 1415, 1418 n. 4 (9th Cir.1984), in support of their contention that we can only review in this appeal "new matter" raised in the defendant caseworkers' 1988 motion. This reliance is misplaced. Without deciding whether the plaintiffs' characterization of Sierra On-Line 's footnote 4 is correct, we note that there were intervening decisions from this circuit which caused the district court to reconsider its earlier order. Thus, there was "new matter" for the district court to consider, and it did so. This "new matter" was the effect of our Meyers and Coverdell decisions on the defendants' claim to absolute immunity, the very issue we consider in this appeal
 
 
 [5]
 Because we resolve this dispute on the basis of absolute immunity, we do not consider whether this court has appellate jurisdiction over the issue of qualified immunity or whether defendants were entitled to qualified immunity
 
 
 [6]
 During October 1981, Aryn Long ran away from the elder Babcocks' home twice. Following these incidents, Tyler placed Aryn in a licensed foster home under the supervision of Marilyn Wallace. Wallace was a secretary at the school attended by the girls. Angela Long asked to be placed in the Wallace home with his sister. Tyler acquiesced, and in December 1981, Angela also was placed in the Wallace foster home. This was a temporary placement until the Long girls were placed in the Michaels' home as a result of the March 31, 1982 Washington Juvenile Court hearing. At the time of this hearing, the Babcock girls were in Wisconsin. The temporary order for placement of the Long girls in the Michaels' home did not extend to the Babcock girls; their placement was deferred pending a continuance of their case for further hearing. The Babcock girls returned from Wisconsin to Washington in April 1982, and, without a court order, the defendant Bronson placed them in the Michaels' home with the Long girls. This was a temporary placement which was confirmed by the juvenile court by an order made at a hearing held May 4, 1982