959 F.2d 241
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
SAN DIEGO HOUSE OF HOPE; Mamie Y. Thomas; Richard Thomas;
Fred Thomas, Plaintiffs-Appellees,
v.
SAN DIEGO DEPARTMENT OF SOCIAL SERVICES, Defendant,
and
Oksana SMITH, Defendant-Appellant.
 No. 90-55497.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 5, 1992.
Decided April 3, 1992.
 
 Before TANG, KOZINSKI and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 The San Diego House of Hope ("House of Hope") is a community care facility for troubled juveniles. In 1985, the State of California prosecuted a license revocation proceeding against the House of Hope. The proceeding was the culmination of an investigation into a variety of charges levelled against House of Hope concerning its treatment of juveniles placed there. After the administrative law judge found most of the allegations against House of Hope to be baseless, House of Hope filed an action in federal district court under 42 U.S.C. § 1983 against those it believed instigated the charges, including appellant Oksana Smith, a county social worker. The district court denied Smith's motion for summary judgment on the grounds of either absolute or qualified immunity. Smith appeals. We reverse.
 
 DISCUSSION
 
 3
 House of Hope accuses Smith of acting and conspiring, from 1976 until 1986, to deprive House of Hope and its employees of their civil rights. Specifically, House of Hope alleges that Smith engaged in a course of discrimination against the House of Hope and its personnel solely because of their race. House of Hope contends that this racial animus manifested itself in (i) wrongful accusations of criminal conduct, (ii) fabricated charges that House of Hope neglected or abused its juvenile residents, (iii) arbitrary reductions and limits on mandatory government payments to House of Hope; (iv) false reports that facilities were unclean and not in proper repair; (v) subjecting the head of House of Hope, Mamie Thomas, to more rigorous training requirements than personnel in other homes; (vi) demands that Mamie Thomas be present at House of Hope facilities at unreasonable hours and for unreasonably lengthy periods of time; (vii) the filing of false investigative reports; (viii) the failure to conduct a reasonable background investigation before bringing charges; (iv) the suspension of House of Hope's license in February 1985; (x) the wrongful filing of a formal accusation against House of Hope in February 1985; (xi) the deliberate refusal to refer children to House of Hope; and (xii) the failure timely to reinstate House of Hope's license after the administrative law judge cleared House of Hope of most of the charges filed against it.
 
 
 4
 Smith argues that, under Ninth Circuit law, she is entitled to absolute immunity in this case. While Smith's argument is well-supported by Ninth Circuit precedent, we need not decide whether to extend absolute immunity under these circumstances because Smith is entitled to summary judgment on qualified immunity grounds.
 
 
 5
 Social workers enjoy absolute immunity for most actions taken in conjunction with child welfare proceedings. In Meyers v. Contra Costa County Dep't of Social Servs., 812 F.2d 1154 (9th Cir.), cert. denied, 484 U.S. 829 (1987), we held that social workers enjoy absolute, quasi-prosecutorial immunity for the initiation and pursuit of child dependency proceedings in cases of suspected child abuse. Id. at 1156. We noted that, like prosecutors, social workers often "must make a quick decision based on perhaps incomplete information as to whether to commence investigations and initiate proceedings against parents who may have abused their children." Id. at 1157. Social workers, we emphasized, cannot properly perform their vital public duties if they must constantly work under the cloud of impending lawsuits. Id. Furthermore, the presence of subsequent checks on the social worker's decision, such as the court trial and appeals, " 'reduce the need for private damages actions as a means of controlling unconstitutional conduct.' " Id. at 1158 (quoting Butz v. Economou, 438 U.S. 478, 512 (1978)).
 
 
 6
 In Coverdell v. Department of Social & Health Servs., 834 F.2d 758 (9th Cir.1987), we extended Meyers by affording a social worker absolute immunity for seeking, obtaining, and executing an ex parte order for the seizure of a newborn child. Id. at 762-65. We held that quasi-prosecutorial immunity attached to the social worker's decision to pursue and obtain the court order based on her belief that the child was at risk of abuse. Id. at 762-64. Once the order issued, the social worker was robed with quasi-judicial immunity for actions taken to enforce the order. Id. at 764-65. We reasoned that "persons who execute court orders ... are themselves 'integral parts of the judicial process.' The fearless and unhesitating execution of court orders is essential if the court's authority and ability to function are to remain uncompromised." Id. at 765 (quoting Briscoe v. LaHue, 460 U.S. 325, 335 (1983)) (citation omitted).
 
 
 7
 Chalkboard, Inc. v. Brandt, 902 F.2d 1375 (9th Cir.1989), cert. denied, 111 S.Ct. 509 (1990), discussed absolute immunity for social workers in the context of a summary license revocation proceeding against a day care facility accused of abuse and overcrowding. Citing Coverdell, the opinion stated that "[i]t is entirely possible that [Department of Health Services] officials who directly serve that [summary closure] process in one way or another will be absolutely immune." Id. at 1379.[1]
 
 
 8
 Most recently, in Babcock v. Tyler, 884 F.2d 497 (9th Cir.1989), cert. denied, 493 U.S. 1072 (1990), we afforded absolute immunity to a social worker's investigative and post-placement monitoring services in connection with a child dependency hearing. Id. at 498, 501-03. We considered absolute immunity appropriate because all of the social workers' actions "were taken in connection with, and incident to" an ongoing judicial proceeding. Id. at 503.
 
 
 9
 These cases suggest that quasi-prosecutorial absolute immunity might be available for those claims in the complaint pertaining to Smith's alleged provision of false information to the state investigators in conjunction with the license revocation proceeding.[2] All of these allegations concern reports or accusations of child abuse, child neglect, unhealthy or unsafe living conditions, and negligent or reckless supervision by House of Hope personnel, that led to the license revocation proceeding.[3] By investigating and providing the information upon which the license revocation proceeding was predicated, Smith served as "an integral part of the judicial process." Babcock, 884 F.2d at 502. Such actions are generally afforded absolute immunity to ensure that the "fear of financially devastating litigation ... [does not] deprive the [adjudicator] of information it needs to make an informed decision." Id. at 503; see also Hennessey v. Washington, Dep't of Social & Health Servs., 627 F.Supp. 137, 139-40 (E.D.Wash.1985) (case worker's divulgence of allegedly false and misleading information to county prosecutor that led to the initiation of dependency proceedings enjoys absolute immunity), cited with approval in Coverdell, 834 F.2d at 763; Whelehan v. County of Monroe, 558 F.Supp. 1093, 1098-1101 (W.D.N.Y.1983) (county department of social services' agents enjoy absolute immunity for alleged negligent investigation of child abuse charges), cited with approval in Coverdell, 834 F.2d at 763.
 
 
 10
 Moreover, the law compelled Smith to report suspected abuse and improper living conditions at the House of Hope. See Cal.Penal Code § 11172(e) (failure to report abuse is a misdemeanor punishable by a six-month jail term and/or a $1000 fine); Cal.Penal Code §§ 11165.7, 11166 (imposing duty on social workers to report suspected child abuse); Cal.Penal Code § 11165.6 (defining child abuse as including physical and sexual abuse, as well as the failure to provide adequate shelter or supervision, in a community care facility); Cal.Welf. & Inst.Code § 16513 (duty to report unsuitable home or institution, enforceable under relevant penal code section); see also Meyers, 812 F.2d at 1158 ("Under California law, social workers are given broad general authority to protect and promote the welfare of all children; to prevent or remedy problems which may result in the neglect or abuse of children."). Denying absolute immunity in such situations would leave social workers whipsawed between the fear of criminal prosecution for failing to report suspicions and being named in a civil lawsuit seeking substantial damages for reporting such suspicions. See Chalkboard, 902 F.2d at 1379-80 & n. 5 (discussing role of statutory authorization for conduct in supporting absolute immunity).
 
 
 11
 This Circuit has not yet decided whether absolute immunity is available to social workers involved in a license revocation proceeding, rather than a child dependency hearing. But see id. at 1379 (absolute immunity might well be available for officials involved in child-care license revocation proceedings). The imperative to protect and remove children from a potentially abusive environment remains. Indeed, the need to let social workers operate unhindered arguably applies with more force under these circumstances because the number of children at risk in any single incident is larger. On the other hand, time pressures are not so exigent in license revocation proceedings. A more thorough investigation can be undertaken before reporting suspected abuse or neglect.
 
 
 12
 Ultimately, however, we need not decide whether Smith in fact enjoys absolute immunity because she is entitled to qualified immunity for each of these charges.
 
 
 13
 Smith must be granted qualified immunity for the charges in the complaint if her conduct did not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." Baker v. Racansky, 887 F.2d 183, 186 (9th Cir.1989) (quotations omitted). In determining whether the House of Hope's constitutional rights were clearly established, we do more than ask whether the general right not to be discriminated against on the basis of race was clearly established at the time of Smith's conduct. Rather, the appropriate inquiry is whether, in the context of the particular facts of this case, the unconstitutionality of Smith's actions was patent. Anderson v. Creighton, 483 U.S. 635, 639-41 (1987); Baker, 887 F.2d at 186.
 
 
 14
 Smith's reports of suspected abuse and negligence at House of Hope did not violate House of Hope's rights. The reports themselves do not intrude upon any rights protected by the federal Constitution or statutory law.
 
 
 15
 Nor do House of Hope's allegations of racial discrimination avoid a grant of qualified immunity. The only evidence introduced by House of Hope to support its claim of racism is Mamie Thomas's affidavit, which is both conclusory and wholly lacking in factual substantiation. The affidavit's only reference to Smith's alleged racial animus is the claim that Thomas overheard Smith refer to her as "Nigger." Assuming for purposes of this appeal that Smith did make such a statement, we cannot condone such behavior by governmental officials. Nevertheless, House of Hope has failed to establish any connection between this brief, isolated incident and the reports made by Smith in her capacity as a county social worker supervising House of Hope. Such "bare allegations" of illicit motive, without evidence that the single statement evinced a racial bias infecting Smith's performance of her official duties, are incapable of defeating Smith's qualified immunity. Harlow v. Fitzgerald, 457 U.S. 800, 817-18 (1982); see also Kraus v. County of Pierce, 793 F.2d 1105, 1108 (9th Cir.1986) (qualified immunity should be granted when plaintiff " 'fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed [unconstitutional] acts' ") (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)), cert. denied, 480 U.S. 932 (1987).
 
 
 16
 House of Hope also charges Smith with a variety of actions unrelated to the license revocation proceedings. Specifically, House of Hope accuses Smith of withholding referrals to the House of Hope, placing children in House of Hope who were not appropriate for placement there, imposing inordinate requirements on Mamie Thomas, failing timely to reinstate House of Hope's license, and setting compensation rates in a racially disparate manner. Unlike the reporting charges, these allegations have no reasonable claim to absolute immunity because they do not address conduct taken in the course of or in support of a judicial or administrative proceeding, nor do they concern actions taken under the direction of a court. See Caldwell v. LeFaver, 928 F.2d 331, 333 (9th Cir.1991) (social workers not entitled to absolute immunity for conduct that "did not aid in the preparation or presentation of a case to the juvenile court," "[was not] taken in connection with or incident to ongoing child dependency proceedings," and did not occur "under the supervision of a court"); Meyers, 812 F.2d at 1157-58 (social worker's decision to order father away from his house enjoys only qualified immunity when made without any connection to judicial proceeding). Smith is, however, entitled to qualified immunity for each of these allegations.
 
 
 17
 A. Failure to Make Referrals and Inappropriate Placements
 
 
 18
 House of Hope argues that Smith discriminated against it by refusing to refer children to the facility in 1984. House of Hope also accuses Smith of intentionally referring children to the facility who were not eligible for admission.
 
 
 19
 The decision not to assign children to a community care facility whose books could not be audited and which was under investigation by the State for alleged abuse and neglect does not, standing alone, violate any constitutional right, let alone a clearly established constitutional right. To the contrary, the refusal to refer under these conditions was consistent with Smith's statutorily-mandated duty to protect the best interests of the children. See Caldwell, 928 F.2d at 334 (social workers entitled to qualified immunity where they acted consistently with statutory duty to protect suspected victim of child abuse). As with the charges of biased reporting and investigation, House of Hope's meager evidence of racial discrimination cannot salvage this claim.
 
 
 20
 B. Disparate Requirements Imposed on Mamie Thomas
 
 
 21
 House of Hope contends that Smith imposed training and record-keeping requirements on House of Hope personnel that were not required of other comparable facilities solely because of race. House of Hope also alleges that Smith demanded that Mamie Thomas be present at the facility more hours than other heads of comparable facilities, solely because of Mamie Thomas's race. No details on these allegations are provided or are discernible from the record or Thomas's affidavit. While any such inequitable treatment could inspire a claim under the Equal Protection Clause, Mamie Thomas's and House of Hope's disparate treatment would only constitute a clear violation of constitutional rights if based on racial or gender discrimination. As noted earlier, House of Hope's unsupported allegation of malice, without more, does not create a genuine issue of racial bias. Smith is therefore entitled to qualified immunity for these charges.
 
 C. Failure to Reinstate License
 
 22
 House of Hope alleges that Smith failed to reinstate its license in a timely fashion after the administrative law judge's proposed decision rejected the bulk of the charges levelled against House of Hope and found that reissuance of House of Hope's license would be consonant with the public welfare. Neither Thomas nor Smith addresses this issue in her affidavit.
 
 
 23
 This charge does not amount to a clear violation of House of Hope's constitutional rights. House of Hope does not allege or evidence in any way that Smith had the authority to re-issue a license or that she played any role in the licensing process. The California Community Care Facilities Act places sole authority for the issuance of licenses in the hands of the State Department of Social Services. Cal. Health & Safety Code § 1509.
 
 
 24
 Because the House of Hope has not alleged that Smith had the authority to re-issue a license to House of Hope and because House of Hope "ha[s] not pleaded one shred of evidence in support of [its] conclusory allegations of conspiracy," we hold that Smith is entitled to qualified immunity on this count. Malachowski v. City of Keene, 787 F.2d 704, 712 (1st Cir.), cert. denied, 479 U.S. 828 (1986).
 
 D. Discriminatory Compensation Rates
 
 25
 House of Hope alleges that Smith consciously and with a racially discriminatory intent set compensation rates for children placed in its facility at amounts lower than that permitted by statute and lower than that afforded comparable facilities. While Thomas's affidavit references the claim, it does not attest to any personal knowledge (as opposed to suspicion) about how the rates were set. Again, House of Hope's failure to buttress its allegations of racial bias with any concrete evidence entitles Smith to qualified immunity on this count.
 
 
 26
 In sum, Smith is entitled to a grant of qualified immunity in this case due to the dearth of evidence substantiating House of Hope's charges of Smith's alleged unconstitutional motive. As the Supreme Court recently emphasized, qualified immunity determinations "ordinarily should be decided by the court long before trial." Hunter v. Bryant, --- U.S. ----, 112 S.Ct. 534, 537 (1991). To allow a single allegation of unsupported hearsay to defeat a grant of qualified immunity and force a public official to trial would render the protections of the qualified immunity doctrine illusory. See id. at 536-37; see also Harlow, 457 U.S. at 817-18.
 
 CONCLUSION
 
 27
 Smith is entitled to qualified immunity in this case because the House of Hope failed to create a jury question on the existence of racial bias as a motivating factor either in Smith's decision to report suspected abuse and neglect or in her performance of administrative duties.
 
 
 28
 The decision of the district court is REVERSED and the case is REMANDED for entry of summary judgment in favor of Smith on the basis of qualified immunity.
 
 
 29
 KOZINSKI, Circuit Judge, concurring in the result.
 
 
 30
 As the majority ably demonstrates, defendant Smith is entitled to absolute immunity on the facts of this case; we need not reach the question of qualified immunity which, in my judgment, is far more difficult. I would remand with directions to enter summary judgment in favor of Smith on grounds of absolute immunity.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 In Chalkboard, we ultimately declined to afford the defendants absolute immunity because the defendants did not affect the closure in accordance with state law. 902 F.2d at 1379-80. "[I]n by-passing the statutorily mandated procedure entirely, and arrogating to themselves a function that state law denies them, defendants have not served in a judicial or prosecutorial capacity that conferred absolute immunity." Id. at 1379 (footnote omitted)
 
 
 [2]
 Specifically, Smith might enjoy absolute immunity against the claims in paragraph 21 (A, B, D, G, H, I, J), and, as incorporated, in paragraphs 26 and 29 of the complaint
 
 
 [3]
 That Smith does not recall (but does not deny) actually providing the information is irrelevant. For purposes of summary judgment on immunity grounds, allegations in House of Hope's complaint that Smith did provide information are taken as true. See Kraus v. County of Pierce, 793 F.2d 1105, 1108 (9th Cir.1986), cert. denied, 480 U.S. 932 (1987)