[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO STRIKE
 FACTS
The plaintiffs, Stanton L. Whitney, Edwin Whitney, and Leona CT Page 5818 Sheets, filed a one-count revised complaint against the defendant, Arlene M. Taplin, a resident of the state of Washington, alleging that the defendant was appointed by the court of the State of Washington as guardian ad litem for Elizabeth Whitney and Jordan Sheets, the children of Edwin Whitney and Leona Sheets and the grandchild of Stanton Whitney. The plaintiffs allege that the defendant, while in the state of Connecticut for personal reasons, conducted a "home visit" with the plaintiffs Edwin Whitney and Leona Sheets and made false representations to them which were reported verbatim, by electronic means, to the plaintiff Stanton Whitney. Specifically the plaintiffs allege the defendant made false representations to the effect that:
a. That she had requested (written) for police and DCYS investigation reports;
b. That if the matter went as far as trial, she'd have all the police and DCYS investigative reports;
c. That she had to go by the wishes of Melody Barone vis a vis contact with Elizabeth and knowledge of the child's location.
d. That she had not spoken to the witnesses espousing the opponents point of view;
e. That she wanted to speak to the children's teachers, doctors, therapists, etc.;
f. That she was an investigator as far as what was in the best interests of the children.
g. That in the underlying matter there were only two possibilities, valid abuse or coaching.
h. That her job was the best interest of children, and parents are on periphery.
i. That she could only say what she saw with the children;
j. That she was looking at what happened a year and a half age (1993) as the basis of the underlying claim;
k. That before coming out to Connecticut she looked over whole case; CT Page 5819
l. That there had been no contact from the plaintiffs or their attorneys.
m. That she thought that Ed Whitney should know where his daughter was so that could communicate;
n. That it would be ideal for all parents to see the same psychological evaluator;
o. That it was very difficult to find someone to evaluate and cooperate with Washington;
p. That the psychological evaluations of Barone and Cason had been sent to all attorneys;
q. That when the plaintiffs sent back the defendant's questionnaires, she would start to contact the witnesses and individuals designated by he plaintiffs;
r. That she was attempting to find he truth in first 36 hours of her investigation;
s. That she thought there needed to be contact with children;
t. That she had no ability to find out anything about Bryce (Smith, another minor child of plaintiff Leona Sheets);
u. That she had no order for investigation in the State of Connecticut;
v. That she doesn't get involved with "saving the parents";
w. That she knew that there was more going on than was being told, and that would make a world of difference.
The plaintiffs seek damages for the costs in pursuing a trial in the underlying custody litigation conducted in the State of Washington. The defendant has filed a Motion to Strike the complaint asserting, inter alia, that she is immune from suit under the law of the State of Washington.
In her memorandum in support of the Motion to Strike, the defendant argues that she is immune from suit for acts done in the performance of her role as guardian ad litem. She cites CT Page 5820 several cases from other jurisdictions which hold that a guardian ad litem functions as an "arm of the court" and is therefore entitled to either quasi-judicial or absolute immunity for acts committed within the scope of his/her duties. Furthermore, the defendant argues that the language of General Statutes §4-165[1] indicates that guardians ad litem should be afforded immunity from suit under Connecticut law. In addition, the defendant contends that a choice of law analysis under the Restatement (Second), Conflict of Laws (1971) (hereinafter, Restatement Second) requires that the Washington law of absolute immunity be applied.
In their memorandum in opposition, the plaintiffs do not contest the defendant's assertion that Washington law provides absolute immunity for guardians ad litem acting in the scope of their official duties. Nevertheless, they argue that the defendant is not immune from liability because she was not acting within the scope of her authority when she allegedly made false representations to them. In addition, the plaintiffs argue that General Statutes §§ 4-165 and/or 4-141 are inapplicable. Specifically, the plaintiffs argue that the defendant is not a state officer or state employee. Further, the plaintiffs note that the defendant was neither a commissioner of the superior court admitted to practice law in Connecticut nor was she acting in a quasi-judicial position as a court-appointed arm of a Connecticut court.
"This court has traditionally adhered to the doctrine that the substantive rights and obligations arising out of a tort controversy are determined by the law of the place of injury, or lex loci delicti." O'Connor v. O'Connor, 201 Conn. 632, 637,519 A.2d 13 (1986). Nevertheless, the court in O'Connor v. O'Connor
abandoned "categorical allegiance to the doctrine of lex loci delicti in tort actions" and moved toward the "most significant relationship" analysis advanced by the Restatement Second. Id., 648.
Using the lex loci delicti approach, Connecticut law would be applied because Connecticut s the place of the alleged injury. The fraud and misrepresentation allegedly occurred while the defendant was conducting a home visit with the plaintiffs at their residence in Connecticut.
Under the most significant relationship analysis set forth in the Restatement Second, "[s]eparate rules are stated for CT Page 5821 different torts and for different issues in tort." Restatement Second § 145, Introductory Note. The Restatement Second § 148 sets forth the analysis for determining the state with the most significant interest in a fraud and misrepresentation case.
"The rule of this Section applies to actions brought to recover pecuniary damages suffered on account of false representations, whether fraudulent, negligent or innocent." Restatement Second § 148, comment (a). Section 148(1) provides that "[w]hen the plaintiff has suffered pecuniary harm on account of his reliance on the defendant's false representations and when the plaintiffs action in reliance took place in the state where the false representations were made and received, the local law of this state determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied."
The allegedly false representations were made and received during the home visit in Connecticut. In addition, the plaintiffs' action in reliance took place in Connecticut. The plaintiffs' revised complaint states, that "[a]s a result of this induced belief, the plaintiffs failed, initially, to approach the case as if the defendant were an adversary." This failure to treat the defendant as an adversary arguably occurred in Connecticut. Thus, the law of Connecticut applies unless Washington has a greater interest under § 148 of the Restatement Second.
"The rule of [Restatement § 148(1)] calls for application of the local law of the state selected on the basis of the stated contacts unless, with respect to the particular issue, some other state has a more significant relationship to the occurrence and the parties. Whether there is such another state will be determined in the light of the choice-of-law principles stated in § 6. In large part the answer to this question will depend upon whether some other state has a greater interest in the determination of the particular issue than the state selected on the basis of the stated contacts. The extent of the interest of each of the potentially interested states should be determined on the basis, among other things, of the purpose sought to be achieved by their relevant local law rules and of the particular issue involved (see § 145, Comments (c-e)." Restatement Second § 148 comment (b). CT Page 5822
Section 6 of the Restatement Second provides that: (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law. (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied. O'Connor v. O'Connor,
supra, 201 Conn. at 651.
According to an analysis under Restatement Second § 6, Washington has a greater interest in the determination of this issue than Connecticut. Under Washington law, a guardian ad litem is covered by absolute immunity for any functions performed as an integral part of the judicial process. Barr v. Day, 124 Wash.2d 318,879 P.2d 912 (Wash. 1994); see also Babcock v. Tyler,884 F.2d 497 (9th Cir. 1989), cert. denied 493 U.S 1072 (1990). Washington is the state that appointed the defendant as a guardian ad litem. The defendant's home visit with the plaintiffs constituted part of her investigative duties for the Washington court. Washington has an interest in ensuring that its guardians ad litem are not subject to suit in other states for functions performed for the Washington courts.
Conversely, Connecticut law does not indicate whether guardians ad litem are covered by any type of immunity. Although General Statutes § 4-165 provides immunity from personal liability for state officers and employees, it does not clearly include guardians ad litem under this umbrella of protection. No statutory provision or case law expressly provides that a guardian ad litem is a state officer or employee. Connecticut has not expressed a specific policy interest with regard to the immunity which should be granted to a guardian ad litem.
Although guardians ad litem do not clearly fall under the protection of §§ 4-165 and 4-161, these provisions indicate that Connecticut has a policy interest in protecting employees functioning in positions comparable to guardians ad litem. Specifically, these provisions afford protection to commissioners CT Page 5823 of the superior court acting in quasi-judicial positions. Thus, regardless of whether §§ 4-165 and 4-161 apply here, these provisions lend further support to the determination that the court may properly apply Washington's absolute immunity law without undermining Connecticut's policy interests.
The next factor to be considered under § 6 is the protection of justified expectations. In this case, the defendant conducted the home visit with the plaintiffs as a part of her investigative duties for custody actions in the Washington courts. The home visit in Connecticut was therefore ancillary to the Washington custody actions. Thus, the defendant had an expectation that Washington law would be applied to her conduct. The plaintiffs were aware that the defendant was conducting the home visit as part of her function in the custody actions with the Washington courts. Thus, it is arguable that the plaintiffs should have reasonably expected that Washington law would be applied to the defendant's conduct even while she was in Connecticut.
Another factor to be considered is the basic policies underlying the particular field of law. In assessing this factor, it should be noted that a number of courts have specifically held that guardians ad litem are absolutely immune from liability for actions within the scope of their roles in custody disputes. See, e.g., Scheib v. Grant, 22 F.3d 149 (7th Cir. 1994); Cok v.Cosentino, 876 F.2d 1 (1st Cir. 1989); Myers v. Morris,810 F.2d 1437 (8th Cir. 1987); Kurzawa v. Mueller, 732 F.2d 1456 (6th Cir. 1984); McKay v. Owens, 937 P.2d 1222 (Idaho 1997); Babbe v.Peterson, 514 N.W.2d 726 (Iowa 1994); Collins ex rel. v. Tabet,806 P.2d 40 (N.M. 1991); Tindell v. Rogosheske, 428 N.W.2d 386
(Minn. 1988); Berndt ex rel. Peterson v. Molepske, 565 N.W.2d 549
(Wis.Ct.App. 1997); Delcourt v. Silverman, 919 S.W.2d 777
(Tex.Ct.App. 1996); State ex rel. Bird v. Weinstock, 864 S.W.2d 376
(Mo.Ct.App. 1993); Penn v. McMonagle, 573 N.E.2d 1234
(Ohio Ct.App. 1990); Delbridge v. Office of Public Defender, 569 A.2d 854
(NJ. Super. 1989).
"Although the principles of certainty and ease of application must be taken into account, the Restatement cautions against attaching independent weight to these auxiliary factors, noting that they are ancillary to the goal of providing rational, fair choice of law rules. As comment i to 6 states: In a rapidly developing area, such as choice of law, it is often more important that good rules be developed than that predictability CT Page 5824 and uniformity of result should be assured through continued adherence to existing rules. See also Restatement (Second), Conflict of Laws § 6, comment j (policy in § 6 [2] [g] should not be overemphasized, since it is obviously of greater importance that choice-of-law rules lead to desirable results)." (Internal quotation marks omitted.) O'Connor v. O'Connor, supra, 201 at Conn. 651-52. Nevertheless, the Washington law of absolute immunity can be easily applied by the court. In addition, applying Washington law would insure uniformity and predictability of result by avoiding the application of several states' laws to the same conduct. Making a guardian ad item susceptible to suit in numerous states with differing standards of immunity would undermine the objective of achieving certainty, predictability and uniformity of result.
Similarly, the law of absolute immunity should be applied to further the interests of the interstate system. Applying a rule of absolute immunity enables guardians ad litem to perform their functions in other states without the fear of liability. This facilitates a more impartial and effective representation by guardians ad litem within the interstate system. The needs of the interstate system are particularly important in today's mobile society where custody disputes often transcend state boundaries and effect parties from different states.
Under the choice of law inquiry set forth in § 148(1) of the Restatement Second, the court is not required to apply Connecticut law despite the fact that the plaintiffs' actions in reliance arguably took place in Connecticut and the allegedly false representations were made and received in Connecticut. An analysis of the principles stated in § 6 illustrates that Washington has a more significant relationship to the occurrence and the parties. As demonstrated by the foregoing analysis, Washington has an interest in ensuring that its guardians ad litem are not subject to suit in other states for functions performed for the Washington courts.
Conversely, Connecticut law does not indicate whether guardians ad litem are covered by any type of immunity. Nevertheless, General Statutes §§ 4-165 and 4-161 demonstrates that Connecticut has a policy interest in protecting employees in comparable positions. Although it is not clear whether guardians ad litem fall under the protection of §§ 4-165 and4-161, the existence of these provisions serves to strengthen the argument that the court may properly apply Washington's absolute CT Page 5825 immunity law without undermining Connecticut's policy interests. Therefore, it is submitted that the court should determine that it is proper to apply Washington law under the "most significant relationship" analysis advanced by the Restatement Second.
Under Washington law, "the crucial inquiry in resolving a claim of absolute immunity is whether the function for which immunity is claimed is so much an integral part of the judicial process that to deny immunity would disserve the broader public interest in having participants such as judges, advocates and witnesses perform their respective functions without fear of having to defend their actions in a civil lawsuit." Babcock v.Tyler, supra. 884 P.2d 497, 502.
The defendant should be covered by absolute immunity because her function during the home visit constituted an integral part of the judicial process. On August 31, 1993, the defendant was appointed to act as a guardian ad litem for two children in two modification of custody actions within the Washington courts. As part of her continuing investigation, she made a home visit to Edwin Whitney and Leona Sheets in Connecticut. Thus, this home visit was made in the context of the Washington custody action and constituted an integral part of the judicial process.
In their complaint, the plaintiffs claim that the defendant made twenty-two false representations to them during her home visit. The plaintiffs contend that the defendant is not immune from liability because she was not acting within the scope of her authority when she made these allegedly false representations to them. Nevertheless, an essential part of the defendant's role as guardian ad litem is an investigative function which includes meeting and talking with the parents. The defendant conducted the home visit within the context of the Washington custody dispute and made these allegedly false representations while talking with the plaintiffs. The defendant's function in conducting this home visit constituted an integral part of the judicial process because the purpose for meeting with the plaintiffs was to complete her investigation and report back to the Washington court.
Accordingly the Motion to Strike is granted.
RUSH, J.